Brady, J.
This action was brought upon a promissory note for $10,000, payable one year after date to the order *597 of George J. Osgood, rhade by the defendant, Lester Wallack, and indorsed by the defendant, Theodore Moss. Mr. Osgood died in the fall of 1882, before the note became due, and the same was found among his papers by his executors, who brought this action.
The answer admitted the making of the note, and the loan to the defendant, Moss, of the sum of $10,000 mentioned in it, alleging that the defendant, Wallack, made it for the mere accommodation of the defendant, Moss.
The defendant set up a counter-claim for $15,509.53, which the defendant claimed arose in favor of Moss, the indorser, by reason of the testator, in his lifetime, having agreed to manage a stock account for him, guaranteeing him against any loss on such account, for services to be rendered in superintending or overseeing the painting or frescoing of a house which Mr. Osgood was then engaged in erecting upon Fifth avenue.
When the issue came on for trial, the defendants’ counsel moved for the affirmative of the issue. The motion was denied, and the defendants excepted. The counsel for the plaintiff then offered in evidence the note in suit, which was admitted ; and thereupon the defendants admitted the protest of the note and proper notice to the indorser. If the notice of protest had been admitted by the answer, the motion denying the affirmative of the issue to the defendants’ would have been erroneous, and would doubtless have entitled the defendants to a new trial under the adjudications of Murray v. New York Life Ins. Co. (85 N. Y., 236) and cases cited. But the answer denied the protest of the note, and, therefore, it became necessary for the plaintiff to prove it. The exception thus considered is consequently of no avail whatever to the defendants.
Upon the trial some evidence was given tending to establish the counterclaim. One of the witnesses testified that he was present at an interview in which Mr. Osgood said to Mr. Moss that the latter knew very little about Wall street affairs, and further, “You get out of this office and attend to my house, and I will attend to your account down town;_ and I will make you $50,000, and you shan’t lose anything,” which was followed up by evidence that the purchases and sales made by him with reference to the agreement thus expressed were made upon an account of Mr. Moss with the firm of O. J. Osborne & Co., and further by a statement of another witness, that Mr. Osgood said that Mr. Moss was managing his house, and as the latter understood the business he was going away; that he did not have the time to attend to it; and that he was speculating with Mr. Moss’ account and would compensate him in that way. And still further, by a witness who said *598 that Mr. Osgood stated that Mr. Moss was attending to some business for him in regard to his house; that he was going away on his yacht and had directed them to pay money to Mr. Moss on his draft whilst he was gone; and that he subsequently did pay money on Moss’ draft for work done by a painter or frescoer on Mr. Osgood’s house.
All this testimony was uncontradicted, and its effect was substantially to establish the agreement which constituted the counterclaim interposed, namely, that Mr. Osgood undertook to operate in stocks upon an . account of Mr. Moss with the firm of C. J. Osborn & Co'., in consideration for which Mr. Moss was to superintend the painting or frescoing of Mr. Osgood’s house, Mr. Osgood assuming the entire management of the operation in stocks about which he claimed to have superior intelligence and experience, in the performance of his agreement in that respect, expressly agreeing that Mr. Moss should lose nothing. Nevertheless the plaintiff’s counsel, upon the close of the defendant’s testimony, asked the court to direct a verdict for the plaintiffs. The counsel for the defendant asked to go to the jury upon the issues raised by the pleadings, and upon the question as to whether the agreement was made, and when and where; which motion was denied, and the defendants excepted. The court then directed judgment in favor of the plaintiffs for principal and interest, which was also objected to, and an exception noted. Upon the application of the defendants’ counsel thereupon, the exceptions were directed to be heard in the first instance at the general term.
It is contended that this agreement was an unreasonable one; that the contract was too indefinite and uncertain to be enforced; and that the consideration given for Mr. Osgood’s promise was grossly inadequate; and further, that there was no acceptance of the offer made by Mr. Osgood. And the learned counsel for the plaintiff has cited a large number of authorities by which these different legal propositions are supposed to be sustained.
In reference to the last statement, namely, that there •was no acceptance of the offer, it may be said as a sufficient answer that both parties, according to the evidence, proceeded to act upon the proposition of Mr. Osgood, he having operated as contemplated, and Mr. Moss having superintended, or overlooked the painting and frescoing of Mr. Osgood’s house.
The learned counsel for the plaintiff urges the proposition that if the agreement is to be carried out as alleged, the estate of Mr. Osgood will be liable for the sum of the note for a few summer morning’s work when Mr. Moss was in town and Mr. Osgood absent. No such claim is interposed *599 by the answer, but that the loss which resulted from Mr. Osgood’s operations to the amount of $15,000 and upwards, should be borne by the estate, and that the amomit of the sum in suit should be deducted therefrom, and the defendants protected by a judgment for the balance between it and the sum lost, and this rests upon the theory that the consideration was grossly inadequate. But the rule on this subject is stated correctly in Waldo’s Pollock on Contracts, 513 (2d Am. ed.), namely, that inadequacy of consideration, though in itself not decisive, may be an important element in the conclusion arrived at by the court of equity with respect to a contract of sale. It was said by Lord West-bury, and invoked by Mr. Pollock, “ It is true that there is an equity which may be founded upon gross inadequacy of consideration, but it can only be where the inadequacy is such as to involve the conclusion that the party did not understand, or was the victim of some imposition.”
It is quite evident that Mr. Osgood was not the victim of imposition, and that he perfectly understood the agreement which he suggested. The defendant’s counsel contends that the suggestion as to the agreement itself was made by Mr. Osgood, doubtless founded upon his friendship for Mr. Moss and sympathy for losses of the latter, which he seemed to think were the result of ignorance or inexperience, or both.
The learned counsel further contends that the agreement made is void for uncertainty, and calls our attention to a class of cases in which uncertainty as to the time of performance has been held to invalidate the contract which was sought to be enforced.
They have not been overlooked in the consideration of the disposition to be made of this appeal, which is sui generis. A compact was suggested by the deceased involving the services of the defendant, Moss, which was carried out, and which authorized the deceased to use in a speculative way a sum of money, and to use it absolutely according to his own views and discretion; which he did, and without any notification to and without permitting the defendent, Moss, to participate in any of his acts. It was not absolutely uncertain as to the time when or the event upon which the transaction should determine, for the reason that when the amount in the account to which the transaction should relate was exhausted, the compact was necessarily ended.
It is true that the deceased might after that incident have proceeded upon his own account to operate for the purpose of restoring the money lost, and thus save himseÉ under his contract of indemnity to the defendant, Moss, against any loss; but he would not then be operating in reference- *600 to the fund which formed the basis of the original agreement with which, according to the understanding of the parties, his operations were necessarily to be connected, and to which he must necessarily be confined. Before his death, and within a reasonable time after the agreement was made, as alleged, this fund was exhausted, and the liability of the defendant consummated so far as the agreement and the subject-matter to which it related affected the relations between the parties.
There being evidence from which the conclusion might be drawn that the agreement out of which the counterclaim arose was in fact made, and the agreement not being void for any of the reasons assigned, it was necessary to submit the issues as to its existence to the jury, and to ask them to say whether it was in fact made and carried out by both parties.
For these reasons a new trial must be ordered, with costs to abide the event. •
Daniels, J., concurs.